### Cowles *vs.* Balzer.

### The Same *vs.* The Same.

The 8d section of the act of 1862, "to prevent animals from running at large in public highways," which makes it the duty of the person taking cattle, &c. into his possession under the authority of the 2d section, to give immediate notice thereof to a justice of the peace or commissioner of highways, contemplates a *written* notice, *it seems.*

Where cattle pasturing in the field of their owner, escape from it into an adjoinining field, owned by another, the latter has no right, under the act above mentioned, to seize and detain the cattle on the ground that they are trespassing upon his premises.

The remedy of the party, in such a case, if he has any, is either by an action of trespass, or by distress *damage feasant,* under the provisions of the Revised Statutes. (2 *R. S.* 517.)

Where two persons own lands adjoining, and there is a division fence between them, one portion of which one of the parties is bound to repair, and the other portion the other party is bound in like manner to keep in repair, and the cattle of one of them escape from his field, through the division fence, into the field of the other, by reason of the defect or insufficiency of that portion of the division fence which the latter is bound to keep in repair, he has no remedy; and if the cattle, while so upon his land, do him a damage, it is *dammum obsque injuria.*

APPEALS from judgments entered upon the reports of a referee. The above entitled actions were brought under substantially similar circumstances, and the questions arising in each were almost, if not entirely, identical. The actions were brought to recover possession of certain cattle, the property of the plaintiff. The defense in each case was that while the cattle were trespassing upon the defendant's premises, he took and detained them, in pursuance of the statute in such case made and provided. The plaintiff met this by introducing testimony to show that the cattle came upon the defendants's close from the adjoining close of the plaintiff; and that they passed over and through a part of a division fence which the defendant was bound to maintain, but which was in fact defective. There was no dispute but that the defendant found the cattle in his corn field, on the day he

Cowles *v.* Balzer.

took them up ; that he immediately gave notice by parol, of his having taken them, to the plaintiff, and to a justice of the peace, or commisssoner of highways of the town. They were replevied the following day after they were taken up, and at about the same hour. The testimony on the part of the plaintiff went strongly to show that a portion of a division fence between the plaintiff's and defendant's premises, through which the cattle appeared to have passed, was in a bad state of repair ; that a former owner of the defendant's farm had built the south part of such fence, about ten years before, and that he and his tenants had maintained it for some time thereafter. There was no testimony, however, tending to show any agreement with the defendant (who was the owner in fee of the premises occupied by him,) nor any notice to, or knowledge in, him about this division fence arrangement ; but on the contrary, it appeared that he never had any notice or knowledge on the subject. There was no testimony in regard to the existence of any town regulations about fences. All the testimony on the part of the plaintiff, about the division fence, was taken under objections.

The referee found the facts above stated, substantially. His reports in the two cases were nearly identical ; the only material difference being, that in the first case the referee found that the defendant refused to deliver the cattle to the plaintiff until $25 should be paid him for damages ; and that in the second case there was no pretense of any claim for damages, but only a refusal to deliver on demand.

The referee reported, in the first action, that the plaintiff was entitled to judgment adjudging him to be entitled to the possession of the cattle at the time of the taking and detention, and that he so retain the possession of the same ; and that he recover of the defendant the sum of $20 as his damages for the detention of said animals, with costs. The report in the second action was in the same form, except that the plaintiff's damages were reported at $12.

*Rowley & Miller*, for the appellant. I. These cases involve the construction of the cattle law of 1862. The exceptions of the defendant, to the testimony as to the condition of the division fence, &c. were well taken, and all substantially for the same reasons. 1. Because the testimony, which tended merely to show that the cattle entered the plaintiff's close through a defective division fence, &c. was immaterial. The facts sought to be established constituted no reply to the defense; they were no bar to the defendant's right "to take into his custody and possession any animal which may be *trespassing* upon premises owned or occupied by him." (*Laws of* 1862, *ch.* 459, *p.* 844, § 2.) At common law, the owner of premises was not bound to fence, and every unwarrantable entry by a person, or his cattle, on the land of another, was a trespass. The purpose of fences, in the view of the common law, was to keep the owner's cattle *in*, and not the cattle of others *out*. If any authority is necessary on this point, sufficient may be found in the case of *The Tonawanda Railroad Co.* v. *Munger*, (5 *Denio*, 255, *affirmed in* 4 *N. Y. Rep.* 349,) and cases there cited. Article 4, of title 4, of part 1, chapter 9 of the Revised Statutes, "Of division and other fences," is then in derogation of the common law. The act of 1862 is but a return to it, for the purposes therein expressed.

It was claimed before the referee that the act of 1862 only applies to cases of cattle running at large on the highway, or entering another's premises *from* the highway. This is contrary to the plain and obvious reading of section 2 of the act. The second clause of that section is plain and express in its terms, and contains no restriction or limitation. All that is necessary to make lawful a taking and disposal under this act is, that the cattle shall be *trespassing upon premises owned or occupied* by the person taking them. The only question is, were the cattle of the plaintiff trespassing, &c. ? Or, did the fact, if established, of their having passed from the plaintiff's premises to the defendant's through a defective

division fence which the defendant was bound to maintain, make them any the less trespassers ? It would seem that there can be but one answer. They were nevertheless trespassers, and are so spoken of and treated, even in cases before the law of 1862. (*Griffin* v. *Martin,* 7 *Barb.* 306, *per Hand, J.*)

The only consequences are prescribed in the statute itself, relating to fences, before cited. Sections 37 and 44 definitely settle what the consequences shall be to a party in fault in regard to his fences. Section 37 provides that he shall be liable to the party suffering damage, for such damages as shall accrue, to be ascertained by the appraisal of the fence viewers, &. Section 44 is that "whenever the electors of any town shall have made any rule or regulation, prescribing what shall be deemed a sufficient fence in such town, any person who shall thereafter neglect to keep a fence according to such rule or regulation, *shall be precluded* from recovering compensation in any manner, for *damage* done by any beast lawfully going at large on the highways, that may enter on any lands of such person, not fenced in conformity to the said rule or regulation, or for entering through any defective fence."

Assuming that this article of the statute is unrepealed by section 6 of the act of 1862, still the defendant's right to take the cattle *trespassing* on his premises, under the law of 1862, is the same ; for that law is in no sense one providing for the recovery of "compensation in any manner for damages done." It is entirely silent on the subject of such damages. He might have no right to recover damages in an action, nor by distress, but yet be perfectly justified in taking and holding under this law. But if the fence law, or any part of it, is inconsistent with the act of 1862, it is repealed by section 6 of that act.

2. The fence law only applies in case of the existence of town rules or regulations. (§ 44.) There was a total absence of proof on that subject. The existence of a town

rule or regulation, and what it was, should have been shown, before any testimony was admitted or considered, as to the condition of fences. Such rules or regulations are by statute the test, and only test, of sufficiency. In all cases involving this question, the town rules have been offered in evidence, as in the cases cited. (5 *Denio,* 255. *Also see Colden* v. *Eldred,* 15 *John.* 220 ; *Griffin* v. *Martin,* 7 *Barb.* 297, 298, 300, 307.)

3. If material, the testimony was incompetent. The defendant could not be bound by the acts of former owners or occupants of the premises, without any evidence of notice to him, or any agreement with him. In *Burger* v. *Kortright,* (4 *John.* 415,) Spencer, J. says : "I doubt much the legal efficacy of the agreement. It was not made between these parties."

II. The exception to the admission of the notice served on the defendant was well taken. The notice was served September 2, after both actions were commenced.

III. Assuming, now, that the defendant was bound to maintain the part of the fence through which the cattle entered, and that such part of the fence was, by undisputed evidence, over and adjoining a creek, and that a part of the fence was carried away by high water, in the spring, section 41 of the fence law provides for this case, by directing that the party whose duty it is to keep that part of the fence up, shall repair his part of the same within ten days after being required to do so, by any person interested, by notice in writing, &c. There was no pretense of notice, in this case. The object of this section seems clearly to have been, and its effect is, to relieve a party from any responsibility in such a case, until after default of ten days, after due notice to repair. The defendant in this case is entitled to every presumption in his favor. He had a *common law* right, (regardless of the act of 1862,) to take up cattle trespassing on his premises, and the plaintiff is seeking to defeat or render nugatory this right under this statute in

regard to fences. He must therefore prove every thing neces-sary to make out his defense. (15 *John.* 220.)

IV. The exceptions to the findings of the referee raise, substantially, the same questions considered under the first point. (1.) That his findings of fact were based on inad-missible and incompetent testimony. (2.) That if the find-ings of fact are correct, his conclusion of law was erroneous, for the reason that the act of 1862 justified the taking of the cattle, regardless of the question of fences; that that act is no remedy for the recovery of *damages;* and that the default of a party in keeping up fences only has the effect to render him liable for damages sustained by the other party, and to prevent his recovering damages sustained by him by reason of cattle entering through such defective fence.

V. In the first case the referee finds that the defendant refused to deliver the cattle on demand, unless paid $25 for damages done by the cattle. In the second case there is no such finding, no claim or demand for damages. Proof was admitted, in both cases, showing notice by parol to the plaintiff and to a justice of the peace, by the defendant, of the taking up of the cattle, immediately after they were taken, and of post-ing notices. The referee has reported no finding on this subject. The demand, in the first case, of $25 for damages, by the defendant, did not prejudice his right to hold under the law of 1862, even if it should be held that he could not distrain for damages. He gave immediate notice to the owner and to a justice of the peace. This was all he was bound to do to justify his taking and holding under that law. If the plaintiff desired to repossess himself of his cattle, that law prescribes what he was bound to do, before he could lawfully demand them. The second case is free from this question.

*P. I. Clum,* for the respondent. I. The defendant had no right to detain the cattle arbitrarily until the plaintiff should pay him $25 damages. He was not the proper person to assess the damages. His remedy (if he had any) was to

Cowles *v.* Balzer.

apply to the fence viewers, according to 2d Revised Statutes, 3d edition, page 607, sections 1, 2, 3, or resort to the common law action of trespass.

II. The cattle having passed upon the defendant's premises from the plaintiff's through a defective division fence, which the defendant was bound to keep in repair, he, being in default, was not entitled to maintain an action or recover damages; could not distrain them; and they were in no legal sense trespassers. (1 *R. S.* 3*d ed.* 403, § 39. 3 *Hill,* 38. 5 *Denio,* 260.)

III. The matters set up in the answer do not constitute a defense. The statute (*Laws of* 1862, *p.* 844,) relied upon for a defense has no application to this case. 1. Its title states that it is "An act to prevent animals from running at large in the public highways." 2. The whole object of the act is declared in the first section, which states that "it shall be unlawful for any cattle, horses, sheep and swine to run at large in any public highway in this state." 3. It does not provide for any damages, as actual damages upon a highway are not presumed to have been committed; or if committed, the party is left to the other legal remedies therefor. 4. The remainder of the act, after the first section, simply provides for the disposition of the animals thus running at large unlawfully. It is necessarily limited to cattle running at large upon a public highway, or perhaps passing therefrom upon the land adjoining. The first clause of section two clearly provides that the animal shall be upon the highway, opposite to any lands owned or occupied by the person seizing, so as to prevent it from going on to his land, either upon the highway from its centre, or upon his land adjoining. The second clause of the same section clearly means that the person owning the half of the highway upon which such animal may then be, or upon his land adjoining, may seize it, it, as to *him,* then being actually trespassing. This is the plain import of that section of the statute. (1 *Kent's Com.* 1*st ed. p.* 430, 431, 432.)

IV. The notice to the justice confers upon him the power of forfeiting the animal; and being a jurisdictional matter, it should have been in writing. The statute contemplated a written notice.

V. The referee committed no error in receiving the proof of the making and repairing of the division fence. The objection to it was that it was immaterial, as the statute upon which the defense is based gave the defendant an absolute right to detain the cattle, regardless of the manner of their entering upon his premises. This testimony certainly was material, proper, and highly essential.

VI. The finding of the referee upon the question of damages, is conclusive, and no error was committed in its admission.

*By the Court,* WELLES, J. It is quite obvious that the defendant, in distraining the cattle of the plaintiff, and in his subsequent proceedings thereon, did not intend and did not in fact proceed under or in accordance with the provisions of title 11 of chapter 8 of part 3 of the Revised Statutes, entitled "Of distraining cattle and other chattels doing damage, and of distraining in other cases." (2 *R. S.* 517. 2 *N. Y. Stat. at Large,* 534, &c.) He undoubtedly intended and attempted to have his proceedings conform to the provisions of the act passed April 23, 1862, entitled "An act to prevent animals from running at large in public highways." (*Laws of* 1862, *chap.* 459, *p.* 844.) The first section of that act declares it to be unlawful for any cattle, horses, sheep, and swine to run at large in any highway in this state. The second section is as follows: "§ 2. It shall be lawful for any person to seize and take into his custody and possession any animal which may be in any public highway, and opposite to any land owned or occupied by him, contrary to the foregoing section. And it shall be lawful for any person to take into his custody and possession any animal which may be trespassing upon premises owned or occupied by him."

The other sections of the act consist of directions for carrying out the provisions of the first two sections. The third section makes it the duty of the person taking the property into his possession to give immediate notice thereof to a justice of the peace or commissioner of highways of the town, whose duty it shall be to give notice of the sale of the property taken, in the manner therein provided.

The notice to the justice of the peace given by the defendant, of the seizure of the plaintiff's cattle, as required by the third section, was in writing. The defendant testified, "the notice to the justice was not in writing. I merely saw him and told him so." The plaintiff's counsel contends that a mere verbal notice is insufficient, and that it should have been in writing. This notice is what gives the justice or commissioner jurisdiction to proceed and advertize and sell the property distrained, and I incline to think it should be in writing. It is not expressly required by the statute ; still I think the statute contemplates a written notice. It is not, however, necessary so to hold in this case, as there are other grounds upon which the case may be safely disposed of.

The object of the statute, as declared by its title, is to prevent animals from running at large in public highways. The first section affirms the title. It introduces an important provision in the law, in relation to cattle running at large in highways. It takes away the power of town meetings to make rules and regulations for determining the times and manner in which cattle, horses and sheep should be permitted to go at large on highways, which power the towns had possessed for a great many years, and in numerous instances had exercised. In furtherance of the object thus declared, and with a view to give effect and practical operation to the first section, it is made lawful, by the second section, for any person to seize and to take into his custody any animal which may be in any public highway, and opposite to any land owned and occupied by him. Thus far, section two provides for taking the cattle only while in the highway and opposite

Cowles *v.* Balzer.

to the land occupied by the person taking them. If they have passed from the highway, into and upon the adjoining field and premises of such person, and are there trespassing upon his possesion, the first branch of the section does not reach the case, or authorize a seizure. Hence the remaining clause of the section was introduced, which gives the right to seize the cattle while so trespassing upon him after having passed from the highway.

The act nowhere provides for the payment of any damages which may have been sustained by the occupant or owner of the land, by reason of any trespass of the cattle upon his land. Section three points out the duty of the person seizing cattle under section two, and of the justice or commissioner to whom he is to give the notice. Such justice or commissioner is to proceed and sell the animals so distrained, and from the proceeds of the sale to retain his own fees and charges, specifying them ; and he shall then pay the person making the distress as follows : For every horse seized and sold, one dollar ; for every cow or calf, or other cattle, fifty cents ; and for every sheep or swine, twenty-five cents, together with a reasonable compensation, to be estimated by the justice or commissioner, *for the care and keeping of the animals from the time of the seizure to the sale.* The balance of the moneys arising from the sale, if any, to be paid to the owner of the cattle, if claimed within one year after sale, and if not so claimed within that time, to be paid to the supervisor of the town, for the use of the town.

The fourth section defines the rights of the owner of the cattle before the sale, and provides that he may demand and be entitled to the possession of the animals seized, upon making the same payments, and making satisfactory proof of ownership. If such demand and proof shall be made at least three days before the time appointed for the sale, the owner shall be entitled to the custody and possession of the cattle, upon paying one half of the several sums above mentioned,

together with the whole amount awarded to the person making the distress, *for the care and keeping of the cattle.*

The fifth section provides for the care of animals running at large, or trespassing, by the willful act of a person other than the owner, to effect that object.

The sixth and last section merely repeals all inconsistent acts.

. No reason can be imagined, as it seems to me, for introducing into this law a provision in relation to distress of cattle *damage feasant*, when the Revised Statutes had made ample provision for such cases.

It can not be that the legislature intended, by the act of 1862, to repeal those provisions ; for then there would be no authority, any where, for having the damages done by the cattle adjusted and paid before the owner of the cattle could reclaim the possession of them. No change of that magnitude was contemplated.

There is not one word in the act on the subject of paying the person seizing cattle under any of its provisions, for damages done by the cattle upon his land. After the first section, the act is *punitory* in its provisions, intended to carry into effect the principle or rule declared in the first section.

In the case before us, the cattle in question were pasturing in the field of the plaintiff, their owner, and escaped from there into an adjoining field of the defendant, and were there seized by the latter, and detained by him until taken by the sheriff upon the papers and process in this action. It does not appear that the cattle in question were ever in any highway. I am, therefore, decidedly of the opinion that the taking of the cattle by the defendant was not justified by the act of 1862, under which the defendant's proceedings were had. The defendant's remedy, if he had any, was either by an action of trespass, or by distress *damage feasant*, under the title of the Revised Statutes before referred to, the proceedings under which are essentially different from those provided in the act of 1862.

Cowles *v.* Balzer.

There is another ground which seems to me equally fatal to the defendant. The referee finds that the cattle in question escaped from the plaintiff's field into the adjoining field of the defendant, through the defective portion of the division fence, which the defendant was bound to keep in repair. This part of the finding the defendant's counsel claims is not warranted by the evidence. Without protracting this opinion by discussing the evidence, which I have carefully examined, I think there was evidence on the subject, sufficient to sustain the finding of the referee. It is well settled, upon authority, that where two persons own lands adjoining, and there is a division fence between them, one portion of which one of the parties is bound to repair, and the other portion the other party is bound in like manner to keep in repair, and the cattle of one of them escape from his field, through the division fence, into the field of the other, by reason of the defect or insufficiency of that portion of the division fence which the latter is bound to keep in repair, he has no remedy; and if the cattle, while so upon his land, do him a damage, it is *damnum absque injuria.*

The two cases under examination are substantially alike, and the preceding remarks and considerations are equally applicable to both.

For the foregoing reasons, I think the judgment in each case should be affirmed.

Ordered accordingly.

[Monroe General Term, March 4, 1867.  *Welles, E. D. Smith* and *Johnson,* Justices.]